OPINION
Loretta Barker appeals the decision of the Juvenile Court of Champaign County to award permanent custody of her minor daughter Victoria to the Champaign County Department of Human Services (hereinafter "CCDHS").
The CCDHS was awarded temporary custody of Victoria on November 25, 1997 after she was adjudicated to be a neglected child. Victoria was placed in foster care and Loretta was allowed supervised visitation with her daughter. As part of the arrangement, a case plan was created. The goal of the case plan was to correct Loretta's alleged deficiencies as a parent, more specifically, her inability to control Victoria's behavior and supervise her daughter's activities, her unwillingness to clean her house and maintain a safe environment for Victoria, and her unstable mental health.
The CCDHS planned to reunite Victoria with her mother once Loretta's parenting skills and mental health improved. Parenting classes for Loretta were arranged by the CCDHS. To maintain her mental health, Loretta was to take medication prescribed for her bipolar disorder and meet with her therapist and psychiatrist.
The CCDHS felt Loretta was making progress in meeting the goals of the case plan and Victoria was returned to her mother's custody on January 12, 1998 for a thirty-day trial reunification. However, at the end of the trial reunification period, the CCDHS again took custody of Victoria at Loretta's request. Loretta asked that Victoria be returned to foster care because she could not handle her daughter's behavior. Victoria was biting, hitting, and kicking other people and forcing herself to vomit.
After Victoria returned to foster care, a meeting was held in which Lisa Leslie, the Barker's CCDHS case worker, and other professionals involved in the Barker case discussed placing Victoria in the care of her grandmother (Loretta's mother), Carol Barker. However, they decided against such placement because they had concerns about Carol Barker's mental health stability and her ability to maintain a safe environment for Victoria. The goal at this point was still to reunify Victoria and Loretta.
Victoria remained in foster care until November of 1999. Her behavior deteriorated even more after the reunification with her mother. She continued to hit, bite and kick others. She urinated on other people. She masturbated publicly and exposed herself to others. At one point, she threatened to kill herself and her foster mother.
According to the testimony of two of her foster mothers, Rose-Ellen Forsythe and Ann Nobile, Victoria's misbehavior most often coincided with her weekly supervised visits with Loretta. Before the visits, Victoria would become angry with her foster parents for taking her to these visits. When she returned from the visits, Victoria would act out violently, hitting, biting, trying to hurt herself.
On July 8, 1998, Lisa Leslie visited Victoria at her foster home. Victoria told Ms. Leslie her mother had hit her and touched her privately. Victoria made similar statements to her foster parents. Victoria said that her mother had touched her while she went to the bathroom and her mother's boyfriend had touched her while she was in the shower.
The CCDHS eventually concluded Loretta was failing to meet her goals of improving her parenting skills, maintaining a safe environment for Victoria, and stabilizing her mental health. During the weekly visits with Victoria, Loretta called her daughter names when she misbehaved. She would become frustrated and yell at Victoria when Victoria would not listen to her. A cleaning lady was hired to clean Loretta's house but soon after the cleaning lady would come in, the house would be filled with dirt and trash. Loretta was hospitalized twice for failing to take her medication. She threatened the life of her case worker, her parenting instructor, and her counselor.
At the semi-annual review of March 3, 1999, the case plan was amended so that the goal was for an award of permanent custody to the CCDHS rather than reunification. The decision to amend the case plan was based on Loretta's continued lack of parenting skills, poor interaction between mother and daughter at visitations, and Victoria's deteriorating behavior. A motion for permanent custody was filed by the CCDHS that same day. On December 14, 1999, the Juvenile Court of Champaign County terminated Loretta's parental rights and awarded permanent custody of Victoria to the CCDHS., Appellant Loretta Barker raises the following three assignments of error:
 I. The trial court erred in finding clear and convincing evidence existed to justify awarding permanent custody of Victoria to the CCDHS and terminating Loretta Barker's parent rights.
 II. The trial court erred in failing to properly consider placing Victoria in the custody of her grandmother before awarding permanent custody of Victoria to the CCDHS.
III. The trial court erred in failing to properly consider the adoptability of Victoria before placing her in the permanent custody of the CCDHS.
In reviewing awards of permanent custody to a children services agency, an appellate court must determine whether the trial court decision is against the manifest weight of the evidence. See Jones v. Lucas County Children Services Bd.
(1988), 46 Ohio App.3d 85, 86; Matter of Stapleton (June 11, 1991), Scioto App. No. 1964, unreported, at p. 7. Custody determinations are usually "within the sound discretion of the trial court." SeeIn Matter of Seymour (July 25, 1994), Hocking App. No. 94CA3, unreported, at p. 9. An appellate court will not overturn an award of permanent custody to a children services agency so long as there is "competent, credible evidence" to support the trial court's judgment. Jones, supra at 86.
In her first assignment of error, Appellant contends that the CCDHS failed to prove by clear and convincing evidence that it should be awarded permanent custody of Victoria. A court can grant permanent custody of a child to a children's services agency "if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and * * * (d) the child has been in the temporary custody of one or more public children services agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.41.4 (B) (1) (d).
In deciding whether awarding permanent custody to a children services agency is in a child's best interests, "the court shall consider all relevant factors, including, but not limited to the following:
(D) (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers and any other person who may significantly affect the child;
(2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; * * *" R.C. 2151.41.4(D).
Clear and convincing evidence is that "degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." SeeJones, supra at 85 quoting Cross v. Ledford (1954), 161 Ohio St. 469,477. It requires more than a mere preponderance of the evidence but less evidence than beyond a reasonable doubt. Jones,supra at 85.
The trial court decided it would be in Victoria's best interest to be placed in the permanent custody of the CCDHS. In determining Victoria's best interests, the court considered the relationship between mother and child and between grandmother and child. The court believed the testimony that Loretta had failed to bring her parenting skills up to an acceptable level. She was unable to control her daughter when Victoria was temporarily returned to her custody. There is evidence she may have physically and sexually abused her daughter. She could not maintain a safe, clean home environment for her daughter. The CCDHS had similar concerns that the grandmother, Carol Barker, would be unable to provide a safe environment for Victoria.The trial court also considered the CCDHS' concerns about Loretta's mental health. She has been diagnosed with bipolar disorder, an illness characterized by extreme mood swings. The disorder can be controlled with medication but can never be cured. Relapses and hospitalizations are to be expected in Loretta's case. Along with her bipolar disorder, Loretta exhibits anger, anxiety, depression, hallucinations, and delusions. Three psychiatrists evaluated Loretta and all three concluded she has serious mental health problems that can inhibit her ability to take proper care of Victoria.
In determining Victoria's best interests, the trial court also considered Victoria's behavioral problems, her violent tantrums, threats to hurt herself and others, and inappropriate sexual acts. The court accepted the testimony of Dr. Cheryl Levine that Victoria's behavior is characteristic of post-traumatic stress disorder. According to Dr. Levine, Victoria's deteriorating behavior can be attributed to abuse by her mother and her mother's boyfriend. The court also found credible the testimony of Victoria's foster mothers, who linked Victoria's misbehavior to visits with her mother.
Turning now to the second prong of the statutory test, the trial court concluded that Victoria had been in the temporary custody of the CCDHS for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. We find that there is competent, credible evidence to support this conclusion. Victoria was first placed in the temporary custody of the CCDHS in November of 1997. Two months later, in January of 1998, she was returned to the care of her mother. In March of 1998, Victoria was again in the temporary custody of the CCDHS and remained so until November of 1999. Thus, for a nearly thirty-two (32) consecutive month period ending after March 18, 1999, Victoria was in the temporary custody of the CCDHS.
We find that there is competent, credible evidence to support the trial court's decision to award permanent custody of Victoria to the CCDHS. Appellant's first assignment of error is overruled.
We turn now to Appellant's second assignment of error. There is no requirement in R.C. 2151.41.4 (B) (1) that the trial court must first consider placing a child in the care of a relative other than the parent before awarding permanent custody of the child to a children services agency. See In Matter of Gilbert,
(August 5, 1996), Butler App. No. CA95-10-179, unreported, at p. 12; In re Dye, (April 19, 1995), Summit App. Nos. 16927, 16932, unreported, at p. 7; In Matter of Beverly, (March 13, 1994), Ross App. No. 93 CA 1992, unreported, at p. 17. The trial court in the instant case did consider Carol Barker, Victoria's maternal grandmother, as a possible custodian for Victoria. However, the court agreed with the CCDHS's conclusion that placing Victoria in the custody of Carol Barker would not be in Victoria's best interests. Even though there was no statutory mandate that the trial court first consider placing Victoria in the care of her grandmother before awarding permanent custody to the CCDHS, the trial court in this case did so and decided that Carol Barker was not a suitable custodian for Victoria. Appellant's second assignment of error is overruled.
In her third and final assignment of error, Loretta argues that the trial court failed to properly consider Victoria's adoptability when deciding to award permanent custody of Victoria to the CCDHS. R.C. 2151.41.4 (D), as amended in 1996, does not require a trial court to consider the adoptability of a child in deciding whether it is in the child's best interests to award permanent custody of the child to a children services agency. An argument may be made, however, that Victoria's adoptability is a "relevant factor" in determining whether awarding permanent custody to the CCDHS is in her best interest. If Victoria's adoptability is such a relevant factor, then the trial court did consider it and believed the testimony of Jim Smith, Director of the Champaign County Department of Human Services, that Victoria is adoptable. Appellant's third assignment of error is overruled.
The judgment of the trial court is Affirmed.
GRADY, P.J., and FAIN J., concur.